Otto C. Jaegek, S.
The decedent died on January 17, 1922 survived by his wife and two adopted sons, James and Lester. He left a will dated April 30, 1920 which the court is asked to construe in this trustee’s accounting proceeding.
In paragraph “ seventh ” the testator created a trust for the benefit of James, for life, and directed that upon his death the trustees “ shall pay the net income derived therefrom to the widow, if any of my said son ”.
James died in 1967 survived by his wife, Catherine Napier Wilson, to whom he had been married since 1909. Petitioner has requested the court to determine whether the trust violates the statute against perpetuities in that James might have been survived by a widow who was not a life in being at the date of the testator’s death.
EPTL 9-1.3 sets forth certain rules of construction with respect to any matter affecting the statute against perpetuities. Subdivision (c) provides: “Where an estate would, except for this paragraph, be invalid because of the possibility that the person to whom it is given or limited may be a person not in being at the time of the creation of the estate, and such person is referred to in the instrument creating such estate as the spouse of another without other identification, it shall be presumed that such reference is to a person in being on the effective date of the instrument.”
The statute is not applicable as such since it and its predecessor sections (Personal Property Law, § 11-b; Beal Property Law, § 42-c) became effective long after the testator’s death. The rule of construction, however, may be applied independent of the statute since it states a reasonable presumption which does not depend upon the statute for its justification.
Under the circumstances here it is reasonable to presume that when the testator referred to his son’s widow, he had in mind the person who was then his son’s wife and who ultimately became his widow. The courts have consistently held in similar circumstances that ‘ ‘ the will is misread if the word ‘ widow ’ is given wider scope ” (Matter of Friend, 283 N. Y. 200, 206; *210 Matter of Irving, 74 N. Y. S. 2d 165; Matter of Wainright, 82 N. Y. S. 2d 345).
Paragraph “ seventh ” is construed as creating a valid trust which is to continue during the life of Catherine Napier Wilson.
In paragraphs “ sixth ” and “ fourteenth ” of his will, the testator created trusts for the benefit of his wife for life and directed that upon her death the principal ‘ ‘ shall be divided into two equal parts and the net income of one of said parts paid to each of [his] two children Lester * * * and James * * * during the natural life of each respectively and on the death of each his part of said principal fund shall be paid to the issue of such child so dying, share and share alike per stirpes, or in default of issue to his widow or if there be no widow then to the survivor of [his] said two sons, or if there be no such survivor then to the issue of [his] said son leaving issue him surviving, or in default of such issue to [his] next of kin * * * living at the time of such distribution.”
The testator’s wife died in 1936. The secondary trusts for the benefit of his son, James, terminated on his death in 1967 and the remainders were paid to his three natural children.
The testator’s other son, Lester, died in 1968. He left no widow or issue of his body but was survived by an adopted daughter. The adoption took place in 1927, five years after the testator’s death. If the adopted daughter is included within the term “issue” as used in the will, she is entitled to the remainder of the trusts held for the benefit of her father. If she is not included within that term, the remainder is payable to the three natural children of testator’s other son, James.
At the time of the testator’s death, section 114 of the Domestic Relations Law provided, in part, that in relation to “ the passing and limitation over” of property “dependent * * * on the foster parent dying without heirs ” the foster child “ is not deemed the child of the foster parent so as to defeat the rights ” of remaindermen. (L. 1916, ch. 453, § 3.) This provision of the statute is applicable here unless ‘ ‘ it affirmatively appears from the context of the will * * * and the extraneous facts proper to be considered that the grantor intended to include adopted children ” (Matter of Rockefeller [Hubbard], 12 N Y 2d 124, 134).
In Matter of Ward (9 A D 2d 950, affd. 9 N Y 2d 722), the testatrix had created a trust for her son for life with remainder to the son’s issue. Nine years after the testatrix’ death the son adopted a child. It was held that the adopted child was included within the term “ issue”. The basis for the decision *211 was testimony that the testatrix favored adoption generally, that she had advocated the adoption of children by her married but childless daughter and that she desired to treat all three of her children equally in the disposition of her estate.
It is this court’s opinion that the facts in the present case weigh more heavily in favor of the adopted child than they did in Matter of Ward. Here, the testator had himself adopted his only children, James and Lester. It is difficult to imagine more cogent evidence of the testator’s favorable attitude toward adoption within the family. That attitude is further reflected in the generous provisions which he made in the will for his adopted children, treating them together with his wife as the chief objects of his bounty, and the many references to them as “my children” and “my son[s] ”. Surely, in the mind of the testator, an adopted child had the same relationship to his adoptive parent as would a natural child. To him there was no distinction.
Generally when a testator intends to exclude adopted children from the class designated as issue, it is because he wishes to preserve the estate within his own bloodlines. Obviously that is not the case here since the issue of testator’s children, whether natural or adopted, would not be blood issue of the testator. There would appear to be no logical basis for an intent to exclude adopted children in these circumstances.
If, however, for some undiscernible reason, the testator had wished to keep the property within the descending bloodlines of his adopted children, he would, in all probability, have provided that upon the death of either son without issue, the remainders of the trusts for his benefit would pass to the other son or his issue. Instead he provided that if either son died without issue the principal of the trusts held for him should be paid to his widow. Only in the event of death without either wife or issue is provision made for a gift over to the other son or the members of his family. This disposition is an affirmative indication of the testator’s lack of concern with bloodlines and his desire to give each son’s family a priority over the other with respect to the principal of the trusts for his benefit.
The context of the will and the extrinsic circumstances compel the conclusion that the testator intended to include adopted children within the term ‘ ‘ issue ’ ’. The will is so construed.